```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


JOHN FOSTER on behalf of himself    )
and all others similarly situated,  )
                                    )
          Plaintiff,                )
                                    )
     v.                             )    No. 4:09 CV 408 DDN
                                    )
 K-V PHARMACEUTICAL COMPANY,        )
                                    )
          Defendant.                )
```

## MEMORANDUM

This action is before the court on the motions of defendant K-V Pharmaceutical Company (K-V) to supplement (Doc. 17) and to dismiss, or in the alternative, for summary judgment (Docs. 9, 29). Plaintiff John Foster has also moved for summary judgment. (Doc. 34.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 14.)

### I. BACKGROUND

On March 12, 2009, plaintiff John Foster commenced this action against K-V, alleging that K-V fired about 1,000 employees without providing the employees the requisite sixty days advance written notice. (Doc. 1 at ¶¶ 12-13, 17.) Foster also alleges that K-V failed to compensate him and the other employees for the sixty days following their dismissal. (Id. at ¶ 19.) Foster claims these actions violated the Worker Adjustment and Retraining Notification Act (WARN Act), 29 U.S.C. § 2101. (Id. at 1, 8.) Foster seeks to maintain this action as a class action, on behalf of himself and on behalf of all others similarly situated. (Id. at ¶¶ 20-29.)

K-V has not answered the complaint; the company filed its motion to dismiss, or in the alternative, for summary judgment, in place of filing its answer. (Doc. 9.) The court has not held a Rule 16 Conference, and the parties have not participated in any discovery.

## II. MOTION TO SUPPLEMENT

K-V moves to supplement its first motion to dismiss or for summary judgment with newly acquired evidence. (Doc. 17.) The newly acquired evidence is an e-mail from Jack Foster to Arnold Breen, in which Foster stated that he has accepted a position at Covidien as an Engineering Manager. The e-mail is dated June 8, 2009, and bears the subject line, "Resignation." (Doc. 17, Ex. D.)

Foster does not question the authenticity of this e-mail. He also does not raise any specific objection to including this e-mail in the record. (Doc. 20.) The motion to supplement is granted.

## III. LOOKING BEYOND THE PLEADINGS

K-V has moved to dismiss the case, or in the alternative, for summary judgment. (Docs. 9, 29.) In support of its motions, K-V has filed affidavits and other supporting documents. (Doc. 30, Exs. 1-6.)

A court has complete discretion to determine whether or not to accept material beyond the pleadings, which is offered in connection with a motion to dismiss under Rule 12(b)(6). Stahl v. U.S. Dep't of Agric., 327 F.3d 697, 701 (8th Cir. 2003). But if the court does not exclude this material, the motion to dismiss becomes a motion for summary judgment under Rule 56. Country Club Estates, L.L.C. v. Town of Loma Linda, 213 F.3d 1001, 1005 (8th Cir. 2000). When a court follows this procedure, converting a motion to dismiss to one for summary judgment, the non-moving party is entitled to notice. Blair v. Wills, 420 F.3d 823, 826-27 (8th Cir. 2005). Without notice, the non-moving party is unable to understand that he has the burden to produce affidavits - and not simply allegations from the pleadings - to rebut what has now become a motion for summary judgment. Country Club Estates, 213 F.3d at 1005. The notice may be actual or constructive. Blair, 420 F.3d at 827.

In this case, Foster has been given sufficient notice of the court's intention to treat the motion to dismiss as one for summary judgment. Indeed, Foster has submitted his own motion for summary judgment (Doc. 34), complete with his own supporting affidavit (Doc. 33) and statement of material facts (Doc. 35 at 15-20). Foster has also filed responses

opposing each of K-V's motions. (Docs. 13, 20, 32.) The court will treat K-V's motions as motions for summary judgment.

## IV. STATEMENT OF MATERIAL FACTS

John Foster began working for K-V on August 21, 2006, as a construction manager. (Doc. 30, Ex. 1 at ¶ 4.) Arnold Breen, a Project Engineering Director, served as Foster's supervisor from September 15, 2008, onward. (Id. at ¶ 3.)

On February 2, 2009, Foster received a one-page memo, with the subject line "Difficult News." (Doc. 33 at ¶ 1; Doc. 38, Ex. A.) The memo was addressed to all K-V employees, and stated that the company would be experiencing extensive layoffs and terminations. (Doc. 38, Ex. A.) After receiving the memo, Foster says he wrote to K-V management, and told them that he would be willing to work for a reduced salary if necessary. (Doc. 33 at ¶ 2.)

On February 2, and February 6, 2009, K-V laid off 467 employees for financial reasons. (Doc. 30, Ex. 3 at ¶ 5; Doc. 30, Ex. 2 at ¶ 4.) According to Bill Smith, K-V's Vice-President of Operations, these layoffs were to be temporary, and to last no longer than six months. (Doc. 30, Ex. 2 at ¶ 5.) Because they were to be temporary, K-V did not provide these employees with WARN Act pay. (Doc. 30, Ex. 3 at ¶ 5.) On February 6, 2009, the company laid off an additional 349 employees. (Id. at ¶ 4.) These layoffs were to be permanent. (Id.) According to Melissa Hughes, K-V's Vice-President of Human Resources, K-V provided these 349 employees with written notice, and the compensation required by the WARN Act.[1] (Id.)

According to K-V policy, employee supervisors were responsible for instituting the layoffs. (Doc. 30, Ex. 1 at ¶ 10; Doc. 30, Ex. 3 at ¶ 6.) To help deliver this news, K-V provided each supervisor with a script that they were required to read. (Doc. 30, Ex. 1 at ¶ 7.) This script stated, in relevant part,

### SCRIPT FOR PLANT MANAGERS

---

[1] There is no indication how much written notice K-V provided these employees. (Doc. 30, Ex. 3 at ¶ 4.)

> Due to business circumstances, the decision has been made to temporarily lay off a number of employees. You are in the group that is being laid off, effective immediately. You do not need to report for work after today.
>
> We expect at this time that the layoff will be less than six months. If that changes, we will notify you.
>
> You are eligible for unemployment compensation and we will not contest your application. Your benefits (medical, dental) will continue until the end of the month and then you will be eligible for COBRA. At that time, we will send you a COBRA packet for enrollment. We have established a Human Resources help line during this temporary layoff to specifically address your questions about the layoff, benefits, including stock or 401(k).
>
> We are going to hand out a contact change form to ensure we have current information for future recalls. . . .
>
> Please turn in your contact change form along with your badge, keys, and any other company property in the envelope provided as you leave this room. You will be given a few minutes to remove any personal belongings from your locker. When you are finished please exit the facility.

(Doc. 30, Ex. 4.)

Breen received his copy of the script on February 5, 2009. (Doc. 30, Ex. 1 at ¶ 8.) The next day, Breen read from the script, telling fifty-two employees of the Engineering Department that they were being laid off, but that the layoffs were expected to last less than six months. (Id. at ¶¶ 6, 9.) Foster was among these fifty-two employees, and Breen reached him by telephone to deliver the news. (Id. at ¶ 10.) Breen asserts he read from the script, telling Foster that the layoffs were not expected to last more than six months. (Id.) But according to Foster, Breen simply told him that he was being "furloughed."[2] (Doc. 33 at ¶ 4.) After February 6, 2009, Foster did not perform any work for K-V, or get paid by K-V. (Id. at ¶¶ 9-10.) Foster began receiving unemployment benefits around this time. (Id. at ¶ 11.) He also received information on how to continue receiving health insurance through COBRA around this time. (Id. at § 12.)

---

[2] Foster also maintains that Breen did not read from the script. (Doc. 33 at ¶ 4.)

On February 10, Breen and Foster spoke in person. (Doc. 30, Ex. 1 at ¶ 11.) According to Breen, Foster told him that he would not be returning to K-V, unless "certain people [were] gone." (Id.) Foster denies saying this, and asserts that he told Breen he was interested in returning to K-V even if he found another job. (Doc. 33 at ¶ 6.) According to Foster, K-V never indicated that he would be recalled within six months, or within a longer time period. (Id. at ¶ 8.)

In April 2009, Foster received a notice from Fidelity, the company holding his 401(k), informing him that he needed to start making loan repayments. (Id. at ¶ 13.) In response to the notice, Foster called Fidelity. (Id.) According to Foster, Fidelity informed him that K-V had changed his employment status to "terminated." (Id.)

As of early June, Foster had not received any correspondence from K-V since losing his job. (Id. at ¶ 14.) At the same time, he had been hearing reports that K-V's financial condition was deteriorating. (Id. at ¶ 15.) Concerned that he might lose his accrued vacation pay and other benefits, Foster sent Breen an e-mail on June 8, 2009, with the word "Resignation" in the subject line. (Id.; Doc. 17, Ex. D.)

The e-mail stated:

From:Foster, Jack C . . . .
Sent:Monday, June 8, 2009 1:22 PM
To:Breen, Arnold
Subject:Resignation

Arnold,

I have accepted a position at Covidien as Engineering Manager. With being furloughed, I'm not sure what steps I need to take with KV to end employment, receive remaining vacation pay and my 401K. If you can direct me to the right person I would greatly appreciate it. It was a pleasure working with you and I wish you and KV nothing but the best!

Thanks,

Jack Foster
Engineering Manager
Covidien

(Doc. 17, Ex. D) Foster sent the e-mail from his new Covidien account. (Id.) Foster says he used the word "resignation" in the subject line because he wanted to prompt K-V to handle his request without appearing

confrontational. (Doc. 33 at ¶ 16.) After reading the e-mail, Breen believed that Foster had resigned from his job at K-V. (Doc. 30, Ex. 1 at ¶ 18.)

On March 9, 2009, K-V began recalling some of the employees who had been temporarily laid off the month before. (Doc. 30, Ex. 2 at ¶ 9.) In all, K-V recalled 167 employees between March 9, and July 6, 2009. (Id. at ¶ 10.) Among those recalled, thirty-three employees resigned and chose not to return to K-V. (Id.) Of the recalled employees, six were from the Engineering Department, one of whom resigned and chose not to return. (Doc. 30, Ex. 1 at ¶ 19.) K-V recalled the engineering employees on July 6, 2009. (Id.) According to Breen and Smith, Foster was not included in the recall because he had already resigned from his position. (Id. at ¶ 20; Doc. 30, Ex. 2 at ¶ 11.) K-V ultimately eliminated Foster's position. (Doc. 30, Ex. 2 at ¶ 11.)

On July 6, 2009, K-V determined that it would have to permanently lay off 301 of the employees who had been temporarily laid off in February. (Doc. 30, Ex. 3 at ¶ 9.) According to Hughes, K-V informed these employees of the decision on July 8, and provided them with all of the compensation required by the WARN Act. (Id. at ¶ 10.) With the exception of those employees who voluntarily resigned, Hughes states that all the employees that were temporarily laid off in February have either been recalled, or have received their WARN Act compensation. (Id. at ¶ 11.)

## V. SUMMARY JUDGMENT STANDARD

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 785 (8th Cir. 2007). The court must view the evidence in the light most favorable to the nonmoving party and accord it the benefit of all reasonable inferences. Devin, 491 F.3d at 785. A fact is "material" if it could affect the ultimate disposition of the case, and a factual dispute is "genuine" if there is substantial evidence to support a reasonable jury verdict in

favor of the non-moving party.  Die-Cutting Diversified, Inc. v. United Nat'l Ins. Co., 353 F. Supp. 2d 1053, 1054-55 (E.D. Mo. 2004).

Initially, the moving party must demonstrate the absence of an issue for trial.  Celotex, 477 U.S. at 323.  Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead proffer admissible evidence that demonstrates a genuine issue of material fact.  Fed. R. Civ. P. 56(e); Howard v. Columbia Pub. Sch. Dist., 363 F.3d 797, 800 (8th Cir. 2004); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003).

### VI. ARGUMENTS

K-V argues that there are no material issues of fact, and that it is entitled to summary judgment.  First, K-V argues that Foster did not suffer an employment loss because he voluntarily resigned.  Second, K-V argues that Foster did not suffer an employment loss because a temporary layoff of less than six months does not constitute an employment loss.  Third, K-V argues that Foster lacks standing to represent class members if his own claims fail as a matter of law.  Fourth, K-V argues that Foster's claims on behalf of other employees also fail, because those employees were either recalled, or given proper notice and payment under the WARN Act.  Fifth, K-V argues that any motion to amend should be denied because the claims are unrelated to the WARN Act. (Docs. 10, 16, 22, 29.)

Foster also argues that he is entitled to summary judgment.  First, Foster argues that he suffered an employment loss when he was terminated or laid off, and that his resignation e-mail did not change his status under the WARN Act.  Once he was terminated, he did not have a position from which he could resign.  He notes that the Department of Labor's regulations establish that an employment loss begins at the layoff date, and does not depend on the employer's terminology.  Second, Foster, argues that the term "voluntary departure" can only apply to an employee's actions before being terminated or laid off.  He also argues that the voluntary departure exception does not apply to layoffs.  Third, Foster argues that the WARN Act is designed to penalize wrongdoing, rather than to provide an employee with back-pay. (Docs. 13, 32, 38.)

## VII.  DISCUSSION

The WARN Act requires an employer to give sixty days' notice to all affected workers before ordering a mass layoff.  29 U.S.C. § 2102(a). An affected employee is an employee who "may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer."  29 U.S.C. § 2101(a)(5).  An employment loss is defined as either (A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding six months, or (C) a reduction in hours of work of more than fifty percent during each month of any six-month period.  29 U.S.C. § 2101(a)(6).

Congress passed the WARN Act to provide "workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market."  Rifkin v. McDonnell Douglas Corp., 78 F.3d 1277, 1282 (8th Cir. 1996) (quoting 20 C.F.R. § 639.1).  It is because of this purpose that the WARN Act defines an employment loss as it does. See id.  Employees who choose early retirement or who are rehired within six months of a layoff do not fall within the WARN Act's purpose because there is no need for retraining or alternative jobs.  Id. at 1282-83; Kephart v. Data Sys. Int'l, Inc., 243 F. Supp. 2d 1205, 1224-25 (D. Kan. 2003).

**Termination**

Foster argues he suffered an employment loss because he was terminated from his position before he sent his resignation e-mail.

The Department of Labor uses the term "termination" to mean a permanent cessation of the employment relationship.  54 Fed. Reg. 16042, 16047 (Apr. 20, 1989)(final rule).  As a result, an employee is not terminated if he or she is eventually rehired in the same position. Rivkin, 78 F.3d at 1282.  In determining whether an employee has been terminated, "it is the actuality of a termination which controls and not the expectations of the employees."  Id.  An employee's subjective belief about the likelihood of his or her future employment is not to be used

in determining whether that employee suffered an employment loss. See Martin v. AMR Servs. Corp., 877 F. Supp. 108, 115 (E.D.N.Y. 1995), aff'd sub nom., Gonzalez v. AMR Servs. Corp., 68 F.3d 1529 (2d Cir. 1995)(per curiam).

In this case, the affidavits show that K-V terminated and laid off several hundred employees in February 2009. At the time, the layoffs were intended to be temporary, lasting no more than six months. Indeed, the script for plant managers emphasized the temporary nature of the layoffs. It noted that the layoffs were expected to last "less than six months," and noted that a help line had been established to address questions concerning "this temporary layoff." (Doc. 30, Ex. 4.) By July 2009, K-V had recalled 167 of the 467 employees who were part of the temporary layoff, illustrating that K-V had reasonably believed that the layoffs would not be permanent. The remaining 300 employees were permanently laid off, and received WARN Act payments.

John Foster was one of the 467 employees who was temporarily laid off in February 2009. There is no evidence he was among the 349 employees who were initially terminated. There is no evidence Foster ever received any correspondence from K-V that suggested he had been permanently laid off. See Martin, 877 F. Supp. at 116 (noting that the laid off employees had not received any payment for accrued vacation time, which was typically sent to terminated employees). In his e-mail, Foster indicated he was the one interested in ending his employment with K-V. The e-mail was titled "Resignation," and referred to his furlough – not his termination. In his affidavit, Foster again used the word "furlough." (Doc. 17, Ex. D.) There is simply no evidence K-V terminated Foster in February 2009.

Foster argues that Fidelity told him K-V had changed his employment status to "terminated." This statement constitutes hearsay, and can only be used to show Foster's state of mind; it cannot be used to show Foster was actually terminated. Fed. R. Evid. 801(c); Fed. R. Evid. 803(3). And under Rifkin and Martin, the employee's own beliefs and expectations do not determine whether an employment loss has occurred. Foster also notes that he began receiving unemployment benefits and information on COBRA in February 2009. Again, this evidence does not show that K-V

terminated Foster. In its script for laid off employees, K-V specifically stated that laid off employees were eligible for unemployment compensation, and that they would be receiving a COBRA packet. (Doc. 30, Ex. 4); see also Martin, 877 F. Supp. at 115 (noting that an employer's reference to COBRA rights is not a reliable basis for distinguishing between a layoff and a termination). Taken as a whole, Foster has failed to offer legally sufficient evidence that he was terminated. To the contrary, Foster's e-mail, together with the supporting affidavits, demonstrate that he voluntarily resigned from his position with K-V, to accept a job with Covidien.

Absent allegations of constructive discharge, when an employee leaves a company of his own free will, the employee has voluntarily departed, and has not suffered an employment loss within the meaning of the WARN Act. Collins v. Gee West Seattle, LLC, No. C08-238 MJP, 2009 WL 3784336, at *3 (W.D. Wash. Nov. 10, 2009). An employee's departure is voluntary even if the employee feared he would soon be unemployed, and even if his departure follows the announcement of a mass layoff. See id.; Ellis v. DHL Express (USA), No. 08 C 6541, 2009 WL 3060272, at *5 (N.D. Ill. Sept. 21, 2009); see also 54 Fed. Reg. at 16048 ("DOL does not, however, agree that a worker who, after the announcement of a plant closing or mass layoff, decides to leave early has necessarily been constructively discharged or quit 'involuntarily.'").

Foster resigned from his position with K-V after he was included in a company-wide layoff. Looking to Rifkin, Collins, and the Department of Labor's Regulations, Foster's resignation was a voluntary departure under the WARN Act. As a result, he did not suffer an employment loss within the meaning of the statute.

**Layoff**

Foster argues he suffered an employment loss because he was laid off for a period exceeding six months. He also argues that the voluntary departure exception only applies to terminations.

Under the plain language of the WARN Act, a layoff exceeding six months constitutes an employment loss. 29 U.S.C. § 2101(a)(6)(B). On February 6, 2009, Breen informed Foster that he was being temporarily

laid off. On June 8, 2009, Foster wrote to Breen, and told him he had accepted a position with Covidien. Taken together, Foster resigned from his position at K-V before his layoff reached the six-month threshold, and before he suffered an employment loss within the meaning of the statute.

Any suggestion that a layoff continues beyond an employee's voluntary departure date would produce illogical results. It would force employers to hypothesize about every departed employee's future recall status, and would allow departed employees to collect WARN Act payments despite being employed or retired. The suggestion would also conflict with the WARN Act's stated purpose. Workers who have voluntarily left their jobs during a temporary layoff do not need the protections provided by the Act. Rifkin, 78 F.3d at 1282-83; Kephart, 243 F. Supp at 1224-25.

**Class Action Status**

In his complaint, Foster seeks to maintain his WARN Act action as a class action, on behalf of himself and all others similarly situated. (Doc. 1 at ¶¶ 20-29.) However, Foster has not suffered an employment loss within the meaning of the WARN Act. He may not, therefore, prosecute a class action on behalf of other similarly situated employees.[3] O'Shea v. Littleton, 414 U.S. 488, 494 (1974).

An appropriate judgment order is issued herewith.

                                                  /S/   David D. Noce
                                            **UNITED STATES MAGISTRATE JUDGE**

Signed on March 12, 2010.

---

[3]The court does not take any position on the claims of any other K-V employee. Those claims are not before the court. See Golden v. Zwickler, 394 U.S. 103, 108 (1969) ("The federal courts . . . do not render advisory opinions.").